**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

\* \* \*

BEYKER EDUARDO ZABALETA
BALLERA,

Petitioner,

v.

PAM BONDI, *et al.*,

Respondents.

Case No. 2:26-cv-00279-RFB-MDC

**ORDER GRANTING PETITION FOR
WRIT OF HABEAS CORPUS
(UNSEALED)[1]**

Before the Court is Petitioner Beyker Eduardo Zabaleta Ballera's First Amended Petition for Writ of Habeas Corpus ("Petition") pursuant to 28 U.S.C. § 2241, challenging the lawfulness of his civil detention at Nevada Southern Detention Center ("NSDC") in the custody of Immigration and Customs Enforcement ("ICE"). Petitioner asserts that his continued detention by Federal Respondents violates the Fifth Amendment, as he has been deprived of material interests—namely his liberty—without due process, and he has been subjected to unconstitutional conditions of confinement, necessitating his immediate release.[2] For the following reasons, the Court grants the Petition on these bases.

I.    **BACKGROUND**

**A. Petitioner Beyker Eduardo Zabaleta Ballera**

The Court makes the following findings based on the verified First Amended Petition and

_____

[1] This order was originally filed under seal, but is now issued unsealed and redacted at the request of Petitioner. See Motion to Unseal, ECF No. 28.

[2] Because the Court grants immediate release on due process grounds, it need not reach the statutory dispute raised by the parties at this time.

exhibits provided by parties. Petitioner Beyker Eduardo Zabaleta Ballera is a 28-year-old native and citizen of Venezuela. See First Amended Petition ("Petition"), ECF No. 9 at 5. On May 3, 2023, Petitioner entered the United States requesting asylum and presented himself to immigration authorities in Laredo, Texas. See Form I-213, ECF No. 16-2 at 13. After being inspected by immigration authorities, Mr. Zabaleta was paroled into the country for one year and issued a Notice to Appear ("NTA"). See id. Petitioner subsequently applied for and was granted Temporary Protected Status ("TPS") under 8 U.S.C. § 1254a and was also granted work authorization. See id.; ECF No. 9 at 5. His TPS status expired on April 2, 2025, and he submitted an application for re-registration on May 13, 2025. See ECF No. 16-2 at 13. This application was pending when ICE arrested Petitioner in July 2025, after being notified that he was detained at the Washoe County Jail in Reno, Nevada. See id. Petitioner was issued a new NTA on July 28, 2025, stating that he has "been admitted to the United States" but was removable under 8 U.S.C. § 1182(a)(7)(A)(i)(I). See 2025 Notice to Appear, ECF No. 16-2 at 6. However, Department of Homeland Security ("DHS") filed a Form I-261 on September 15, 2025, changing this designation to "arriving alien." Form I-261, ECF No. 16-2 at 10.

On December 4, 2025, an immigration judge immigration judge ("IJ") ordered Petitioner removed from the United States, a determination he appealed; Petitioner's appeal with the BIA was filed on January 4, 2026 and remains pending. See IJ Removal Decision, ECF No. 16-3; ECF No. 16 at 6. Petitioner did not receive any individualized custody determination before his detention by ICE began, nor did he receive one over the course of his first six months in detention. See id.; ECF No. 9 at 5. On February 10, 2026, an IJ determined that they lacked jurisdiction to issue Petitioner a bond based on the designation of Petitioner as an "arriving alien." See IJ Bond Decision, ECF No. 16-4.

For the last eight months, Petitioner's access to mental and medical health treatment has been severely hindered while in Respondents' custody. See Supplement to First Amended Petition ("Supplement"), ECF No. 11 at 2.

- 2 -



### B. Legal Background

The following legal framework under the Immigration and Nationality Act ("INA") is relevant to Petitioner's challenge to the lawfulness of his ongoing detention.

#### i. *Removal Proceedings Under §1229(a) and Detention Under § 1226*

Removal proceedings under § 1229a, the "usual removal process," involve an evidentiary hearing before an IJ. Dep't of Homeland Sec. v. Thuraissigiam, 591 U.S. 103, 108 (2020). Section § 1226 of the INA provides that while removal proceedings are pending, a noncitizen "on a warrant," "may be arrested and detained" and that the government "may release the alien on bond . . . or conditional parole." 8 U.S.C. § 1226(a)(2); accord Thuraissigiam, 591 U.S. at 108 (during removal proceedings, applicant may either be "detained" or "allowed to reside in this country").

"Section 1226 generally governs the process of arresting and detaining . . . [noncitizens] already in the country pending the outcome of removal proceedings," including noncitizens who are "present in the country" despite being "inadmissible at the time of entry." Jennings v. Rodriguez, 583 U.S. 281, 288-89 (2018). "[O]nce inside the United States . . . the default rule" is set forth in § 1226(a): "The Attorney General may issue a warrant for the arrest and detention of

[a noncitizen] 'pending a decision on whether the [noncitizen] is to be removed from the United States.'" Id. at 288 (quoting § 1226(a)). Following the noncitizen's arrest, the Attorney General "may continue to detain" the noncitizen or "may release" the noncitizen on bond or "conditional parole." § 1226(a)(1)-(2).

After a noncitizen is detained under § 1226(a), DHS makes an initial custody determination to either continue to detain the noncitizen, set bond, or release on conditional parole. See 8 C.F.R. §§ 236. 1, 1003.19, 1236.1(d). Any officer authorized to issue a warrant of arrest under § 1226(a) can release a noncitizen on bond or conditional parole if the officer is satisfied that such release would not "pose a danger to property or persons" and the noncitizen is "likely to appear for any future proceedings." Id., § 236.1(c)(8). If DHS denies release on bond or parole, a noncitizen can request a custody redetermination, *i.e.*, bond hearing, before an IJ; "Federal regulations provide that aliens detained under § 1226(a) receive bond hearings at the outset of detention." Jennings v. Rodriguez, 583 U.S. 281, 306 (2018) (citing 8 CFR §§ 236.1(d)(1)). If an immigration judge has determined the noncitizen should be released, based on a finding that the noncitizen is not "a threat to national security, a danger to the community at large, likely to abscond, or otherwise a poor bail risk," DHS may not re-arrest that noncitizen absent a change in circumstance. See Panosyan v. Mayorkas, 854 F. App'x 787, 788 (9th Cir. 2021).

### ii. *Parole*

As relevant here, ICE/DHS may choose to release a noncitizen seeking entry on parole, on a discretionary and case-by-case basis. Accordingly, a noncitizen who has been detained at the border may be paroled for humanitarian reasons, or to provide a significant public benefit. 8 U.S.C. § 1182(d)(5)(A). Parole under that section "shall not be regarded as an admission" of the noncitizen, and "when the purposes of such parole shall, in the opinion of the Secretary of Homeland Security, have been served the alien shall forthwith return or be returned to the custody from which he was paroled and thereafter his case shall continue to be dealt with in the same manner as that of any other applicant for admission to the United States." Id. That Section's implementing regulations provide termination of parole is automatic "at the expiration of the time

- 4 -

for which parole was authorized." 8 C.F.R. § 212.5(e)(1). However, where parole is automatically revoked, a noncitizen "shall again be released on parole" if their "exclusion, deportation, or removal order cannot be executed within a reasonable time," or in the opinion of a DHS official "the public interest requires that the alien be continued in custody." Id., § 212.5(e)(2)(i).

## II.    LEGAL STANDARD

The Constitution guarantees the writ of habeas corpus "to every individual detained within the United States." Hamdi v. Rumsfeld, 542 U.S. 507, 525 (2004) (citing U.S. Const., Art. I, § 9, cl. 2). "Its province, shaped to guarantee the most fundamental of all rights, is to provide an effective and speedy instrument by which judicial inquiry may be had into the legality of the detention of a person." Carafas v. LaVallee, 391 U.S. 234, 238 (1968) (citations omitted). Historically, "the writ of habeas corpus has served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest." I.N.S. v. St. Cyr, 533 U.S. 289, 301 (2001) (citations omitted). Federal courts "have a time-tested device, the writ, to maintain the 'delicate balance of governance that is itself the surest safeguard of liberty." Boumediene v. Bush, 553 U.S. 723, 745 (2008) (quoting Hamdi, 542 U.S. at 536). The writ protects against "arbitrary imprisonments," which "have been, in all ages, the favorite and most formidable instruments of tyranny." Id. at 744 (quoting the Federalist No. 84 (Alexander Hamilton). This Court has jurisdiction to grant writs of habeas corpus to noncitizens who are being detained "in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3); see also Lopez-Marroquin v. Barr, 955 F.3d 759, 759 (9th Cir. 2020) ("[D]istrict courts retain jurisdiction under 28 U.S.C. § 2241 to consider habeas challenges to immigration detention").

Although habeas corpus is "civil in nature[,] and the petitioner bears the burden of proving that his detention is illegal[,]" Carlson v. Landon, 186 F.2d 183, 188 (9th Cir. 1950), the mechanics of habeas proceedings are unique. See Harris v. Nelson, 394 U.S. 286, 294–95 (1969). When a court confronts a viable habeas petition, it must either award the writ or order respondent(s) to show cause why the writ should not be granted—i.e., to "make a return certifying the true cause

of [ ] detention." 28 U.S.C. § 2243; see also Harris, 394 U.S. at 298–99 (citation omitted). Since habeas petitions must be verified, see 28 U.S.C. § 2242, their undisputed factual allegations should be taken as true. See Carlson, 186 F.2d at 188 (quoting Whitten v. Tomlinson, 160 U.S. 231, 242 (1895)) (citations omitted).

### III.    DISCUSSION

#### A.  Due Process – Lack of Pre-Deprivation Hearing

The Due Process Clause prohibits deprivations of life, liberty, and property without due process of law. See U.S. CONST., amend. V. There is no question that these protections extend to noncitizens present in the United States. See, e.g., Trump v. J.G.G., 604 U. S. ___, 145 S. Ct. 1003, 1006 (2025) (per curiam) ("'It is well established that the Fifth Amendment entitles aliens to due process of law' in the context of removal proceedings . . .") (quoting Reno v. Flores, 507 U.S. 292, 306 (1993)); Zadvydas v. Davis, 533 U.S. 678, 693, (2001) ("[T]he Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent."); Hussain v. Rosen, 985 F.3d 634, 642 (9th Cir. 2021) (holding the "Fifth Amendment entitles aliens to due process of law in deportation proceedings.").

Noncitizen detainees charged with being in the U.S. illegally are entitled to procedural due process, meaning "notice and opportunity to be heard 'appropriate to the nature of the case.'" J.G.G., 145 S.Ct. at 1006; see also A. A. R. P. v. Trump, 145 S. Ct. 1364, 1367 (2025). Due process "is a flexible concept that varies with the particular situation." Zinermon v. Burch, 494 U.S. 113, 127 (1990). "[T]he government's discretion to incarcerate non-citizens is always constrained by the requirements of due process." Hernandez v. Sessions, 872 F.3d 976, 981 (9th Cir. 2017).

Substantive due process protects individuals from government action that interferes with fundamental rights. See Regino v. Staley, 133 F.4th 951, 959-60 (9th Cir. 2025). "Governmental action that infringes a fundamental right is constitutional only if 'the infringement is narrowly tailored to serve a compelling state interest.'" Id. at 960 (citing Reno, 507 U.S. at 302). "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint— lies at the heart of the liberty [the Due Process Clause] protects." Zadvydas, 533 U.S. at 690.

Substantive due process thus protects noncitizens from arbitrary confinement by the government, which violates a noncitizen's substantive due process rights except in certain "special and narrow nonpunitive circumstances where a special justification . . . outweighs the individual's constitutionally protected interest in avoiding physical restraint." Id. at 690 (internal quotations omitted) (quoting Foucha v. Louisiana, 504 U.S. 71, 80 (1992) & Kansas v. Hendricks, 521 U.S. 346, 356 (1997)).

### i. *Procedural Due Process*

To determine whether detention violates procedural due process, courts apply the three-part test set forth in Mathews v. Eldridge, 424 U.S. 319 (1976). See Rodriguez Diaz v. Garland, 53 F.4th 1189, 1206 (9th Cir. 2022) (collecting cases and applying the Mathews test in similar immigration detention contexts).

Under Mathews, the Court weighs the following three factors: (1) "the private interest that will be affected by the official action"; (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards"; and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." Mathews, 424 U.S. at 335.

### 1. The Private Interest

The first Mathews factor considers the private interest affected by DHS's decision to detain Petitioner without a pre-deprivation hearing See Mathews, 424 U.S. at 335. Here, that is Petitioner's interest in being free from imprisonment, "the most elemental of liberty interests." Hamdi, 542 U.S. at 529. In this country liberty is the norm and detention "is the carefully limited exception." United States v. Salerno, 481 U.S. 739, 755 (1987); see also Rodriguez Diaz, 53 F.4th At 1207 ("An individual's private interest in freedom from prolonged detention is unquestionably substantial.") (citations omitted). Petitioner has a fundamental interest in freedom from physical confinement, and that liberty interest is particularly strong given his initial release from detention in 2023, the fact that Respondents did not seek his return to custody upon the expiration of his parole in May 2024, and because there is no evidence that Petitioner violated any conditions of

parole placed on him for the duration of his parole.

Courts in the Ninth Circuit have consistently found that the government's decision to release an individual creates "'an implicit promise' that the individual's liberty will be revoked only if they fail to abide by the conditions of their release." See Ramirez Tesara v. Wamsley, ——— F.Supp.3d ———, No. 2:25-CV-01723-MJP-TLF, 2025 WL 2637663 (W.D. Wash. Sept. 12, 2025) (collecting cases) ("When he was released from his initial detention on parole, Petitioner took with him a liberty interest which is entitled to the full protections of the due process clause."); Rocha Chavarria v. Chestnut, No. 1:25-CV-01755-DAD-AC, 2025 WL 3533606, at *3 (E.D. Cal. Dec. 9, 2025) ("Many district courts in the Ninth Circuit have found that non-citizens paroled into the United States pursuant to § 1182(d)(5) have a liberty interest in their continued release, entitling them to certain due process protections, the extent of which are determined by applying the test provided in Mathews v. Eldridge, 424 U.S. 319, 335 (1976)."). If the express terms of a petitioner's parole allowed for discretionary termination or expiration, that does not somehow obviate the need for the government to provide an individualized hearing prior to re-detaining him given the significance of his liberty interest. See Pinchi v. Noem, No. 5:25-CV-05632-PCP, ——— F.Supp.3d–———, 2025 WL 2084921, at *3 (N.D. Cal. July 24, 2025) ("[E]ven when ICE has the initial discretion to detain or release a noncitizen pending removal proceedings, after that individual is released from custody she has a protected liberty interest in remaining out of custody") (collecting cases). This is particularly the case here where Petitioner was allowed to remain at liberty after the expiration of his parole status. In such instances, an individual has a protectable due process interest in remaining at liberty, especially where, as here, an  individual has established ties to the community.

The first Mathews factor thus weighs strongly in favor of Petitioner.

### 2.   The Risk of Erroneous Deprivation

The second Mathews factor is "the risk of an erroneous deprivation of [Petitioner's] interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards." Mathews, 424 U.S. at 335. This factor too weighs heavily in Petitioner's favor as there is a significant risk that he has been erroneously deprived of his liberty because he was re-

detained without any pre-detention individualized assessment. See 8 C.F.R. § 236.1(c)(8). "A re-detention, without any individualized assessment, leads to a high risk of erroneous deprivation of an individual's liberty interest." Meza v. Lewis, et. al., No. 4:25-CV-171-RGJ, 2026 WL 92102, at *11 (W.D. Ky. Jan. 13, 2026) (citing Munoz Materano v. Arteta, 2025 WL 2630826, at *15 (S.D.N.Y. Sep. 12, 2025)). In this instance, the Court finds that the risk of error—in failing to provide an individualized assessment prior to re-detention—is high given that Respondents have not had to provide a reasoned justification for Petitioner's re-detention, nor confront facts that a decisionmaker could find cut against any justification offered by Respondents. In this case, such facts could include the following: (1) Petitioner complied with parole conditions, as there was no express revocation, only expiration; (2) Respondents did not seek out Petitioner to detain him immediately upon expiration of his parole; (3) Petitioner successfully obtained temporary protected status;[3] (4) when Petitioner first entered the country he was released on parole by Respondents, meaning Petitioner "demonstrate[d] to the satisfaction of the officer that such release would not pose a danger to property or persons, and that [Petitioner was] likely to appear for any future proceeding," and this was prior to Petitioner's establishing of employment and community-based roots in Reno, Nevada. 8 C.F.R. § 236.1(c)(8). Without a process wherein these circumstances can be weighed against the Respondents' justifications for detention by a neutral decisionmaker, the Court must find there is a high risk that Petitioner has been erroneously deprived of his liberty.

In addition, with regards to the discretionary grant of parole under 8 U.S.C. § 1182(d)(5)(A), the enacting regulation does not provide any procedure for a noncitizen to challenge the revocation or expiration of that parole as based on an erroneous factual or legal predicate, as unreasonable, or as otherwise in violation of statutory and regulatory requirements. See 8 C.F.R. § 212.5(e). Under the regulation, where, as here, parole is terminated automatically

---

[3] While the Court need not go into deeper analysis to grant relief in this case, the Court acknowledges that Petitioner had a pending TPS renewal application at the time of his re-detention. In light of the Ninth Circuit's recent decision in National TPS Alliance v. Noem, ____ F.4th ____, 2026 WL 226573 (9th Cir. Jan. 28, 2026), which effectively halted DHS's prior revocation of Venezueluans' temporary protected status, there is potentially additional support for Petitioner's TPS application that did not exist at the point of re-detention and could be considered at a pre-deprivation hearing.

upon an expiration, if the previously paroled noncitizen cannot be excluded, deported, or removed within a reasonable time, the noncitizen "shall again be released on parole unless in the opinion of the official . . . the public interest requires that the alien be continued in custody." Id., § 212.5(e)(1)-(2)(i). However, there is no mechanism for a noncitizen parolee to challenge the official's decision to return them to custody by ensuring either that removal will be executed within a reasonable time or that the official had a reasonable basis for deciding that the public interest requires their continued detention. In other words, no review mechanism exists for a noncitizen whose parole has expired to seek judicial review of a DHS official's decision to return them to custody. This means that a noncitizen has no recourse or mechanism to challenge re-detention after parole expiration based upon an erroneous or mistaken factual or legal predicate, or on an otherwise arbitrary basis.

With regards to the probable value of additional procedure, it is not difficult to conclude that additional procedure of a pre-deprivation hearing is valuable where, as here, the only procedure at present required for continued detention appears to be an unreviewable decision by an agency official based on an undefined standard subject to no formal procedures or review, as opposed to the required individualized assessment neglected by Respondents. Accordingly, the second Mathews factor also weighs heavily in favor of Petitioner.

### 3. The Government's Interest and Burden of Additional Process

The third and final Mathews factor considers, the "Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." 424 U.S. at 335. Respondents continuously assert that the government's compelling interest in steady enforcement of immigration laws and preserving the BIA's authority without judicial intervention warrants denying this Petition, among the many other immigration petitions this Court has recently received. The Court acknowledges that the Government's interests in "protecting the public from dangerous criminal aliens" and "securing an alien's ultimate removal" are "interests of the highest order." Rodriguez Diaz, 53 F.4th at 1188-89. The Court finds, however, that these interests are in fact protected by an individualized determination by an IJ as to whether an individual should be re-detained or granted bond under

existing, well-established procedures *prior* to re-detention where an individual has previously been granted release into the country on parole. In failing to articulate any individualized reason why re-detaining Petitioner is necessary to enforcing immigration law, the question arises "whether the detention is not to facilitate deportation, or to protect against risk of flight or dangerousness, but to incarcerate for other reasons." Demore v. Kim, 538 U.S. 510, 532–33 (2003) (Kennedy, J., concurring).

Respondents have identified no legitimate interest that would support the specific detention of Petitioner despite the government finding years ago, before Petitioner had established roots in this country, that Petitioner did not present a flight risk or dangerousness, releasing him into the United States on parole as a result. Nor have Respondents claimed that releasing Petitioner or adhering to existing procedures would present an administrative or financial burden. The third Mathews factor therefore also weighs heavily in Petitioner's favor and against the government.

In sum, the Court finds Petitioner's continue detention, with no process afforded to challenge it as arbitrary, violates his procedural due process rights.

### ii. *Substantive Due Process*

Government detention violates the Due Process Clause unless it is ordered in a criminal proceeding with adequate procedural protections, or in non-punitive circumstances "where a special justification . . . outweighs the individual's constitutionally protected interest in avoiding physical restraint." Zadvydas, 533 U.S. at 690.

The re-detention of Petitioner without individualized cause to do so clearly violates substantive due process, because the government has asserted no special justification that outweighs Petitioner's constitutionally protected liberty interest. See Zadvydas, 553 U.S. at 691-92 ("once the flight risk justification evaporates, the only special circumstance [ ] present is the alien's removable status itself, which bears no relation to a detainee's dangerousness."). Such indifference from the executive branch to the Constitution's guarantee of freedom from arbitrary detention is grave cause for concern. Respondents here have not articulated *any* interest—let alone a compelling interest—to justify Petitioner's re-detention. Accordingly, in addition to finding that the challenged regulation violates procedural due process, this Court further finds that

Petitioner is currently detained in violation of his substantive due process rights.

**B.  Due Process – Conditions of Confinement**

The Court construes Petitioner's supplements to the Petition as raising an additional due process claim challenging his conditions of confinement based on Respondents' inability to provide adequate mental and medical health treatment. This Court has jurisdiction over such a claim under Ninth Circuit precedent. In Doe v. Garland, the Ninth Circuit found that an immigration detainee's attack on the validity of his confinement without a bond hearing, which requested relief in the form of a bond hearing, "falls within [Pinson v. Carvajal]'s 'core of habeas' (as a cognizable habeas petition) and is also a core habeas petition under [Rumsfeld v. Padilla] (as challenging his present physical confinement)." 109 F.4th 1188, 1194 (9th Cir. 2024) (citing Pinson v. Carvajal, 69 F.4th 1059 (9th Cir. 2023) and Rumsfeld v. Padilla, 542 U.S. 426 (2004)).

Moreover, in the immigration detention context, the Ninth Circuit has recognized that detainees have an implied cause of action to challenge and seek equitable relief for unconstitutional conditions of confinement through a habeas petition. See Roman v. Wolf, 977 F.3d 935, 941-42 (9th Cir. 2020) (finding a putative habeas class of immigration detainees' due process claims arise under the Constitution, and 28 U.S.C. § 1331, which provides subject matter jurisdiction "irrespective of the accompanying habeas petition"). Likewise, the Ninth Circuit has explicitly recognized conditions of confinement claims in habeas in addressing whether "ICE's COVID-19 policies reflected unconstitutional 'punishment' under the Fifth Amendment." Fraihat v. U.S. Immigr. & Customs Enf't, 16 F.4th 613, 647 (9th Cir. 2021). In Fraihat, the Ninth Circuit applied the rule that "a civil detainee awaiting adjudication is entitled to conditions of confinement that are not punitive" to consider the legality of the conditions of immigration detention during the pandemic. Id. (quoting Jones v. Blanas, 393 F.3d 918, 933 (9th Cir. 2004).

- 12 -

The Fifth Amendment requires the government to provide conditions of reasonable health and safety to people in its custody. See DeShaney v. Winnebago Cnty. Dep't of Soc. Servs., 489 U.S. 189, 199–200 (1989); Doe v. Kelly, 878 F.3d 710, 714 (9th Cir. 2017). The government has violated this duty when:

> (i) [It] made an intentional decision with respect to the conditions under which the plaintiff was confined; (ii) those conditions put the plaintiff at substantial risk of suffering serious harm; (iii) the [government] did not take reasonable available measures to abate that risk, even though a reasonable official in the circumstances would have appreciated the high degree of risk involved . . . ; and (iv) by not taking such measures, the [government] caused the plaintiff's injuries.

Gordon v. County of Orange, 888 F.3d 1118, 1125 (9th Cir. 2018). "With respect to the third element, the [government's] conduct must be objectively unreasonable, a test that will necessarily 'turn[ ] on the facts and circumstances of each particular case.'" Castro v. County of Los Angeles, 833 F.3d 1060, 1071 (9th Cir. 2016) (en banc) (second alteration in original) (quoting Kingsley v. Hendrickson, 576 U.S. 389, 397 (2015)). A "mere lack of due care" is not enough; a plaintiff must show "something akin to reckless disregard." Gordon, 888 F.3d at 1125 (quoting Castro, 833 F.3d at 1071). To satisfy the fourth element, a detainee need only prove a "sufficiently imminent danger[ ]," because a "remedy for unsafe conditions need not await a tragic event." Helling v. McKinney, 509 U.S. 25, 33-34 (1993).

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████

     ██████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████

## C.  Scope of Relief

Consistent with its broad equitable authority to fashion a remedy for unlawful detention "as law and justice require," and considering the constitutional injury Petitioner has suffered and continues to suffer due to Respondents' continued enforcement of unlawful detention policies, the Court orders Respondents immediately release Petitioner from custody on his own recognizance. Further, the Court enjoins Respondents from re-detaining Petitioner absent a constitutionally adequate pre-deprivation hearing, wherein Petitioner has notice and opportunity to be heard and wherein the government bears the burden of showing that his re-detention is justified by clear and convincing evidence. See Carafas v. LaVallee, 391 U.S. 234, 238 (1968).

## IV.    CONCLUSION

Based on the foregoing, **IT IS HEREBY ORDERED** that Petitioner Zabaleta Ballera's Petition for Writ of Habeas Corpus is **GRANTED**. Respondents are **ORDERED** to release Petitioner from custody by **4:00 p.m. on March 13, 2026**.

**IT IS FURTHER ORDERED** that Respondents are **ENJOINED** from re-detaining Petitioner absent a constitutionally-adequate pre-deprivation hearing, wherein the government

- 14 -

bears the burden of providing a legal and factual justification exists for re-detention by clear and convincing evidence. If such a hearing occurs, the immigration court must create a contemporaneous record of the hearing that is available to Petitioner upon request, see Singh, 638 F.3d at 1208, and consider Petitioner's financial circumstances as well as possible alternative release conditions in setting bond, see Hernandez v. Sessions, 872 F.3d 976, 990 (9th Cir. 2017).

**IT IS FURTHER ORDERED** that Parties shall file a Joint Status Report on **March 13, 2026** confirming that Petitioner has been released in compliance with this Order.

The docket incorrectly lists Petitioner Zabaleta's name as "Zabaketa." Records from the Executive Officer for Immigration Review ("EOIR") show that the correct spelling of his name is "Zabaleta." The Clerk of Court is therefore **ORDERED** to update the docket with the correct spelling of Mr. Beyker Eduardo Zabaleta Ballera's name.

The Clerk of Court is instructed to enter judgment accordingly and close this case. The Court retains jurisdiction to enforce its order and judgment. Petitioner may move to reopen this case to enforce the judgment without filing a separate case. The Court also retains jurisdiction to consider Petitioner's request for fees and costs pursuant to the 28 U.S.C. § 2412. Petitioner may file an application for fees and costs consistent with the deadlines and requirements set forth in 28 U.S.C. § 2412 and this Court's Local Rules of Practice 54-1 and 54-14.

**DATED:** March 12, 2026.

**RICHARD F. BOULWARE, II**
**UNITED STATES DISTRICT JUDGE**